PIONTKOWSKI et al., Appellants,

v.

SCOTT, Appellee.

[Cite as *Piontkowski v. Scott* (1989), 65 Ohio App.3d 4.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55461.

Decided Oct. 2, 1989.

*Stephen G. Macek* and *William C. Hofstetter*, for appellants.

*Reginald P. Trubey*, for appellee.

K<small>RUPANSKY</small>, Judge.

Plaintiffs, Linda and John Piontkowski, filed a complaint in Cuyahoga County Common Pleas Court case 109705 against defendants Susan and Patricia Scott. Plaintiffs' complaint alleges defendant Susan Scott negligently operated a motor vehicle causing her vehicle to strike the vehicle plaintiff John Piontkowski was driving and in which plaintiff Linda Piontkowski was a passenger. Plaintiffs' complaint further alleges as a result thereof Linda Piontkowski incurred injury to various parts of her body including her jaw and teeth.

Plaintiffs' complaint also alleges defendant Patricia Scott negligently entrusted the vehicle to defendant Susan Scott. Plaintiff John Piontkowski's only claim is for the loss of consortium and services of Linda Piontkowski, his

alleged spouse. Linda Piontkowski prayed for $150,000 damages and John Piontkowski prayed for $50,000 in damages.

Plaintiffs voluntarily dismissed the claim against Patricia Scott for negligent entrustment and amended their prayer against Susan Scott to $250,000.

After a trial by jury, the jury found for plaintiffs and awarded Linda Piontkowski $9,500. The jury awarded John Piontkowski $0. Verdict was journalized February 26, 1988. Plaintiffs filed a timely notice of appeal.

The record before the court of appeals contains a partial transcript of the proceedings in the trial court. The record contains the testimony of plaintiffs' expert Dr. Joel M. Salon and the testimony of defense expert Dr. Kenneth Callahan.

Both witnesses qualified as experts in the field of oral surgery. They both testified to (1) whether plaintiff Linda Piontkowski currently suffers from temporal mandibular joint dysfunction ("TMJ") and (2) whether a TMJ condition did or could have occurred to Linda Piontkowski as a result of the automobile accident giving rise to the case *sub judice*. Plaintiffs' expert testified to a reasonable degree of medical and/or dental certainty Linda Piontkowski suffers from TMJ as a result of a whiplash injury which occurred during the auto accident and this condition is likely to continue into the future.

Dr. Callahan testified that based on a reasonable degree of dental certainty Linda Piontkowski suffers from TMJ but that it is probable the condition resulted from Linda Piontkowski's overbite and not from the automobile accident.

On cross-examination of Dr. Callahan, plaintiffs' counsel elicited Dr. Callahan is usually retained to testify by defense firms when he testifies regarding TMJ. Of the past twenty cases involving TMJ in which Dr. Callahan was retained as an expert witness, he was retained by a plaintiff's firm only once. Plaintiffs' counsel further elicited Dr. Callahan had been retained by defense counsel *sub judice* in the past and Dr. Callahan's fee for preparing two expert reports in the case *sub judice* amounted to approximately $700.

The court refused to allow plaintiffs' counsel to inquire into whether Dr. Callahan had ever been retained by State Farm Insurance. During a proffer at side bar, plaintiffs' counsel indicated Dr. Callahan had been retained by State Farm Insurance in the past and the record indicates State Farm Insurance is defendant's insurance carrier.

Plaintiffs' assign one error on appeal. Plaintiffs' sole assignment of error follows:

"The lower court erred in sustaining the defendants' objection to the plaintiffs' questioning of the defense dental expert witness concerning his

repeated past employment with the defendant's insurance liability carrier and his unfailing favorable testimony to his employer in past litigation for the purpose of showing the extreme prejudice such witness has in favor of the defendants and against the plaintiffs." Plaintiffs' assignment of error lacks merit.

Evid. R. 411, Liability Insurance, provides:

"Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."

Evidence of liability insurance may not be offered to establish proof of negligence but may be offered to show bias or prejudice. See *Beck v. Cianchetti* (1982), 1 Ohio St.3d 231, 1 OBR 253, 439 N.E.2d 417.

" * * * The exclusionary effect of Evid R. 411 is to minimize any unfair prejudice resulting from knowledge of the existence of liability insurance. It is generally recognized that such information may influence juries to decide cases on whether or not money is available from an insurance company to pay a damage award." *Bletsh v. Parma Community Gen. Hosp.* (June 4, 1987), Cuyahoga App. No. 52204, unreported, at 2, 1987 WL 11980. Admissibility of evidence under Evid.R. 411 must satisfy the balancing requirements of Evid.R. 401 and 403. *Id.*

Evid.R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Evid. R. 403 provides:

"(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

In the case *sub judice*, evidence Dr. Callahan had been retained by State Farm Insurance in the past may have been relevant to show bias or prejudice of the witness. However, although Dr. Callahan had been retained by defendant's insurer in the past, there is no indication in the record in the case *sub judice* Dr. Callahan is presently retained by defendant's insurer who is State Farm or merely retained by defense counsel. Plaintiffs sought to

expose Dr. Callahan's continued financial interest in a continuing remunerative relationship with defendant's insurance carrier. Without evidence of current retention by defendant's insurance carrier, the assumption Dr. Callahan would have a financial interest which could be jeopardized by his failure to support defendant's position is remote and speculative. The trial court could have easily determined the unfair prejudice resulting from knowledge of liability insurance substantially outweighed the probative value of this evidence.

In addition, plaintiffs' counsel had already cross-examined Dr. Callahan regarding (1) his tendency to testify for the defense in TMJ cases; (2) his previous retention by the law firm representing defendant along with his previous relationship with defense attorneys in general; and (3) his fee for preparation of two expert witness reports in the case *sub judice*. Therefore, plaintiffs' counsel was permitted inquiry into the area of bias and prejudice due to the witness's possible pecuniary interest in a favorable outcome for the defense, and evidence of Dr. Callahan's prior relationship with State Farm Insurance was, therefore, cumulative. In this regard, the case *sub judice* is distinguishable from *Beck, supra.* There is no indication in *Beck* that the plaintiff was able to establish witness bias through other means. In addition, unlike the case *sub judice*, in *Beck* the record indicated the witness was an employee of the insurance company.

Furthermore, in *Beck*, unlike the case *sub judice*, the witness was a fact witness and not an expert witness. The scope of cross-examination of an expert witness with respect to bias and pecuniary interest is within the discretion of the trial judge. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008.

" * * * In reviewing this issue, we must keep in mind that '[t]he term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citations omitted.) *Id.* at 219–220, 24 O.O.3d at 323, 436 N.E.2d at 1010.

It should be remembered the trial judge has broad discretion in permitting or excluding evidence. The duty of the appellate court is neither to substitute its discretion for that of the trial judge nor reverse on an error of judgment.

Under the circumstances *sub judice*, the trial court did not abuse its discretion in prohibiting inquiry into liability insurance to show bias and prejudice on the part of Dr. Callahan since its ruling was not unreasonable, arbitrary or unconscionable. Accordingly, plaintiffs' sole assignment of error is not well taken and is overruled.

*Judgment affirmed.*

NAHRA, J., concurs.

PATTON, P.J., dissents.

PATTON, Presiding Judge, dissenting.

I believe the trial judge abused his discretion by prohibiting, rather than limiting, cross-examination seeking to show bias or prejudice on behalf of defendant's expert witness. Therefore, I must respectfully dissent.

The majority tends to cloud the distinctions between what evidence is and what evidence is not admissible under Evid. R. 411. As a general proposition, the majority correctly states that evidence of liability insurance is generally inadmissible when offered to prove negligence. The case for admitting evidence of liability insurance to show bias or prejudice of a witness, however, is somewhat stronger than indicated. As stated in 23 Wright & Graham, Federal Practice and Procedure (1980) 459, Section 5367, citing analogous Fed.R.Evid. 411:

"When a witness testifies on behalf of an insured party, the opponent on cross-examination is entitled to ask about any economic ties between the witness and the insurance company that might be expected to color his testimony. * * * The paradigm case for use of evidence of insurance to show bias is in the cross-examination of a claims adjuster or insurance company doctor." (Footnotes omitted.)

While evidence of bias or prejudice must satisfy the balancing requirements of Evid. R. 403, the majority incorrectly states that such evidence must also satisfy threshold requirements of relevancy. Evid.R. 411 presumes relevancy. See *Beck v. Cianchetti* (1982), 1 Ohio St.3d 231, 1 OBR 253, 439 N.E.2d 417, syllabus ("Evid.R. 411 allows cross-examination on facts which may show bias, interest or prejudice of a witness, even though it may disclose the existence of liability insurance in a personal injury action."). The rule further presumes some prejudice from the disclosure of the existence of liability insurance. See *Beck, supra.* While the admission of such evidence is within the discretion of the trial judge, that discretion should not be exercised to foreclose inquiry simply because the opposing party will be prejudiced. Prejudice should naturally follow from impeachment.

In this case, it is important to note that liability was stipulated prior to trial. In fact, the sole issue at trial concerned plaintiff's damages.

The proffer showed that the expert's economic ties to State Farm were more compelling than the evidence at trial was allowed to show. In the twenty cases in which the expert had rendered an opinion concerning TMJ syndrome, nineteen of these opinions were rendered on behalf of State Farm. Moreover, plaintiff possessed letters from the expert that clearly cast doubt

on the objectivity of the expert's opinion. In these letters to defense counsel, the expert proposed monetary figures for compromise in settlement. The import of this compromise was that the expert was attempting to appease the insurer. This conclusion is reinforced by the expert's statement that he was hopeful his conclusions would be "fair to all parties." The expert later recommended a small settlement sum as being fair on the chance that some of plaintiff's injuries were caused by the accident.

In this case, plaintiffs were allowed some inquiry into defendant's expert's background as a defense witness, but were completely prohibited from inquiring into his relationship with the insurance company. That information was crucial, given the divergent view of the expert opinion. Consider also that plaintiffs' expert had been her oral surgeon well before litigation had commenced and therefore had no demonstrable bias as an expert. Finally, the expert's "proposal" of damages inclined far too much in favor of defendants.[1] Accordingly, I would hold that the trial judge abused his discretion in prohibiting cross-examination of defendant's expert on matters of bias and prejudice and remand the case for a new trial.

---

1. There is an indication in the record that the insurer offered to settle the matter for $25,000. Hence, there is the very real probability that there was some prejudice in the exclusion of cross-examination on bias.